UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

BRENDA JUSTICE,

                        Plaintiff,                  **MEMORANDUM & ORDER**
                                                                          13-CV-659 (MKB)

            v.

NY OFFICER RICHARD KUHNAPFEL and NY
OFFICER GREG HOLME,

                        Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Brenda Justice, proceeding *pro se*, commenced the above-captioned action on February 1, 2013, against Defendant Richard Kuhnapfel, alleging claims of false arrest and wrongful removal of a minor child, H.J., from Plaintiff's care. (Docket Entry Nos. 1, 3.) Plaintiff filed an Amended Complaint on March 22, 2013, adding "NY Officer Greg Holme," Judge M. Armstrong and Liz Beal as Defendants. (Docket Entry No. 11.) By Memorandum and Order dated April 22, 2013, the Court dismissed Plaintiff's claims against Judge Armstrong and Liz Beal. (Docket Entry No. 17). Kuhnapfel moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. (Docket Entry No. 55.) The Amended Complaint was served on Holme on February 12, 2014, *see* Docket Entry No. 71, subsequent to Kuhnapfel's motion to dismiss. For the reasons set forth below, Plaintiff's Amended Complaint against Kuhnapfel and Holme is dismissed.

   **I. Background**

      **a. Factual background**

      The facts alleged in the Amended Complaint are assumed to be true for the purposes of

this motion. On October 15, 2012, Plaintiff was at home with her son H.J., when Defendants arrested Plaintiff pursuant to a warrant issued from the State of Michigan for parental kidnapping/custodial interference. (Am. Compl. 1; Criminal Complaint, annexed to Am. Compl. at 5.) Plaintiff was charged pursuant to New York Criminal Procedure Law § 570.06, New York's "fugitives from justice" law.[1] (Certificate of Disposition from arraignment dated November 16, 2012 ("Certificate of Disposition"), annexed to Am. Compl. at 4.) Plaintiff declined to sign a waiver of extradition, (*see* Waiver of Extradition, annexed to Plaintiff's letter dated January 9, 2014 at 18), and the fugitive from justice charge against Plaintiff was dismissed on November 14, 2012, (Certificate of Disposition).

### b. Procedural background

Plaintiff commenced this action on February 1, 2013, also naming H.J. as a plaintiff, alleging deprivation of Fourth Amendment rights, kidnapping, malicious prosecution and "false imprisonment of a child."[2] By order dated February 22, 2013, Plaintiff was advised that she could not bring claims on behalf of H.J. and the claims as to H.J. were dismissed without prejudice. (Docket Entry No. 5.) The Court also granted Plaintiff 30-days leave to file an amended complaint naming as defendants the individuals responsible for the alleged denial of her constitutional rights. (*Id.*) On March 22, 2013, Plaintiff filed an Amended Complaint adding

---

[1] New York Criminal Procedure Law § 570.06 provides in relevant part: "it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state." N.Y. Crim. Proc. Law § 570.06.

[2] Plaintiff commenced a similar action in the Southern District of New York on November 27, 2012, which was transferred to the undersigned on July 1, 2013. *See* Complaint, *Justice v. Kuhnapfel et al.*, No. 13-CV-3696 (E.D.N.Y. 2013). On August 26, 2013, the Court issued a stay in that case. Plaintiff commenced a third similar action on July 12, 2013 in the Eastern District of New York, *see* Complaint, *Justice v. City of New York*, No. 13-CV-4016 (E.D.N.Y. 2013), which action was dismissed as duplicative on August 27, 2013, *see Justice v. City, State of New York*, No. 13-CV-4016, 2013 WL 4525699 (E.D.N.Y. Aug. 27, 2013).

"NY Officer Greg Holme," Judge M. Armstrong and Liz Beal as Defendants, alleging malicious prosecution, false arrest, wrongful imprisonment, kidnapping, attempted murder, conspiracy to kidnap, endangering the life of a child, intentional infliction of emotional distress to H.J., and violation of H.J.'s Fourth, Fourteenth and Thirteenth Amendment rights. By Memorandum and Order dated April 22, 2013, the Court dismissed Plaintiff's claims against Judge Armstrong and Liz Beal and gave Plaintiff leave to proceed solely as to the false arrest claim against Kuhnapfel and Holme.[3] *See Justice v. Kuhnapfel*, No. 13-CV-659, 2013 WL 1749894 (E.D.N.Y. Apr. 22, 2013). The summons issued to "NY Officer Greg Holme" was returned unexecuted on May 23, 2013. (*See* Docket Entry No. 20.) On September 30, 2014, Plaintiff submitted corrected information about Holme's employer, title and address. (Docket Entry No. 44.) Holme was served on February 12, 2014. (*See* Docket Entry No. 71.)

## II. Discussion

### a. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d

---

[3] On July 2 and July 8, 2013, Plaintiff filed two motions, one seeking injunctive relief for "the immediate return" of H.J., (Docket Entry No. 24, Pl. First Mot. Prelim. Inj. 1), and the other to "stop the illegal adoption" of H.J., (Docket Entry No. 26, Pl. Second Mot. Prelim. Inj. 1). By order dated November 18, 2013, the Court adopted Magistrate Judge Robert M. Levy's report and recommendation denying Plaintiff's motions for injunctive relief as Plaintiff lacked standing to obtain a preliminary injunction and was not likely to succeed on the merits. *See Justice v. Kuhnapfel*, --- F. Supp. 2d ---, ---, 2013 WL 5972515, at *2–6 (E.D.N.Y. Nov. 5, 2013).

Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint but a court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those

4

integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records). If the court takes judicial notice of public records, it does so "in order to determine what statements they contained[,] but not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alteration, citation and internal quotation marks omitted).

### b. False Arrest

A § 1983 false arrest claim "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The elements of false arrest require the plaintiff to establish that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Bernshtein v. City of New York*, 496 F. App'x 140, 141 (2d Cir. 2012) (quoting *Weyant*, 101 F.3d at 853); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). Probable cause allows an officer to confine an individual, therefore, "probable cause is a complete defense to a claim of false arrest." *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) ("Probable cause 'is a complete defense to an action for false arrest.'" (quoting *Weyant*, 101 F.3d at 852)); *Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007) (same). Kuhnapfel argues that Plaintiff fails to state a claim for false arrest pursuant to § 1983 because Plaintiff was arrested pursuant to a valid warrant. (Def. Mem 4.)

5

An arrest made pursuant to a facially valid warrant is presumptively made with probable cause. *See Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."); *see also Southerland v. Garcia*, 483 F. App'x 606, 608 (2d Cir. 2012) (holding that an arresting officer cannot be held liable for false arrest when the arrest was made "pursuant to a facially valid warrant" (citing *Voyticky v. Village of Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005) and *Brooks v. City of Aurora,* 653 F.3d 478, 483 n.5 (7th Cir. 2011)); *Gleis v. Buehler*, 374 F. App'x 218, 220 (2d Cir. 2010) ("Normally the issuance of a warrant by a neutral magistrate creates a presumption that there was probable cause." (citing *Walczyk*, 496 F.3d at 155–56)). A plaintiff may rebut the presumption of probable cause by showing that the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Gleis*, 374 F. App'x at 220 (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993))).

Here, Defendants arrested Plaintiff pursuant to felony arrest warrant # 2012 720913 issued by a Michigan state court on October 4, 2012. (*See* Criminal Complaint, annexed to Compl. at 5; *see also* Michigan arrest warrant, annexed to Affidavit of Alison Moe as Ex. B.)[4]

---

[4] The Michigan arrest warrant is a public record which the Court takes judicial notice of. *See Awelewa v. New York City*, No. 11-CV-778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'" (quoting *Wims v. New York City Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011))); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that, in deciding a motion to dismiss for failure to state a claim, the court "may also look to public records, including complaints filed in state court").

Plaintiff has presented no evidence that this warrant was obtained through the provision of false or omitted information to the issuing court. Rather, Plaintiff argues in a conclusory fashion that "the City falsely wrote up a fraudulent police report." (Pl. Opp'n 1.) Plaintiff's claim that the police report was fraudulent appears to be based on her belief that there was no "fugitive warrant" for her arrest nor a valid warrant issued by the state of Michigan, and therefore that there was no basis for her extradition from New York. (*See id*. at 5, 9.) Although ultimately the State of Michigan chose not to extradite Plaintiff, the issuance of a warrant from the State of Michigan, which was entered into the National Crime Information Center ("NCIC") database, provided sufficient probable cause for Defendants to arrest Plaintiff as a fugitive from justice. *See United States v. Towne*, 870 F.2d 880, 884 (2d Cir. 1989) (finding probable cause where police officer learned of an outstanding fugitive warrant after conducting a background check on NCIC and receiving a certified copy of the warrant); *see also Brown v. City of New York*, No. 10-CV-5229, 2013 WL 3245214, at *9 (E.D.N.Y. June 26, 2013) (finding that defendant officer who learned through NCIC of an outstanding warrant for the plaintiff's arrest "had probable cause to arrest Brown and detain him pursuant to the Massachusetts warrant"); *Sanchez v. Port Auth. of New York & New Jersey*, No. 08-CV-1028, 2012 WL 1068078, at *6 (E.D.N.Y. Mar. 29, 2012) ("NCIC reports are typically considered reliable and information on them has often been accepted as reasonable basis to form probable cause for an arrest."); *United States v. Miller*, 382 F. Supp. 2d 350, 368–69 (N.D.N.Y. 2005) ("Numerous courts in this Circuit have adopted the proposition that probable cause to arrest exists on the basis of a computer hit [from a warrant search] where there is no evidence that the information contained in the computer was false or invalid." (collecting cases)); *Vasquez v. McPherson*, 285 F. Supp. 2d 334, 341 (S.D.N.Y. 2003) (collecting cases holding that NCIC printouts provide reliable probable cause for an arrest).

Plaintiff also argues that because the charges from the Criminal Court of New York were dismissed, there was no basis to arrest her.[5] (Pl. Opp'n 4–5.) However, the fact that the New York fugitive from justice charge was dismissed *after* Plaintiff was arrested cannot overcome the "complete defense" of probable cause created by the facially valid arrest warrant. *See Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (noting that, in determining whether an officer had probable cause to arrest, "[a] court must consider only those facts available to the officer at the time of the arrest and immediately before it" (citation, alteration and internal quotation marks omitted)); *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." (citing *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004))); *Paulin v. Figlia*, 916 F. Supp. 2d 524, 531 (S.D.N.Y. 2013) ("Eventual dismissal of the charges does not affect whether there was probable cause at the time of arrest."). Because Plaintiff was arrested pursuant to a valid arrest warrant issued by a County Court in the state of Michigan, Plaintiff fails to state a claim for false arrest against either Kuhnapfel or Holme. Kuhnapfel's motion to dismiss the false arrest claim is therefore granted and the Court *sua sponte* dismisses the claim against Holme for the same reason.[6]

---

[5] According to Kuhnapfel's submissions, the state of Michigan elected not to extradite Plaintiff, but the arrest warrant remains active should Plaintiff return to Michigan. (*See* Def. Mem. 3; NCIC Lien information dated May 7, 2013, annexed to Letter from Richard Kuhnapfel dated July 25, 2013 as Ex. A (Docket Entry No. 30).)

[6] The Court notes that while Holme has not yet answered or moved with respect to the Amended Complaint, the analysis of the false arrest and interference with familial relations claim, discussed *infra*, applies equally to Kuhnapfel and Holme. Plaintiff's factual allegations do not distinguish between the actions of each Defendant. While the Defendants were employed by different entities — Kuhnapfel by the New York City Police Department, and Holme by the United States Marshal Service — their actions in arresting Plaintiff are materially indistinguishable. *See Vondette v. McDonald*, No. 00-CV-6874, 2001 WL 1551152, at *1 n.2 (S.D.N.Y. Dec. 5, 2001) ("Although defendant Park has not joined in the other defendants' motions, this Court will nonetheless enter judgment dismissing the action as to all defendants, on

### c. "Kidnapping" claim

Plaintiff claims that the removal of H.J. from her care on October 15, 2012, and his subsequent return to a custodial guardian in Michigan constitutes an unlawful "kidnapping." (Am. Compl. 1–2.) The Court construes Plaintiff's claim as a claim for interference with familial relations, which is protected by the Due Process Clause of the Fourteenth Amendment.[7] *See Southerland v. City of New York*, 680 F.3d 127, 152 (2d Cir. 2012) (noting that "[w]e have long recognized that parents have a 'constitutionally protected liberty interest in the care, custody and management of their children'" (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999))), *cert. denied*, 568 U.S. ---, 133 S. Ct. 980 (2013); *see also Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (a "parent's interest in the custody of a child is a constitutionally protected liberty interest subject to due process protection" (alteration omitted) (quoting *Wilkinson ex rel. Wilkinson v. Russell,* 182 F.3d 89, 103 (2d Cir. 1999))). However, "this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Southerland*, 680 F.3d at 152 (citing *Wilkinson*, 182 F.3d at 104). In order to state a claim for violation of this fundamental right to the care and custody of one's child, "a plaintiff

---

its own motion." (citing *Kaplan v. Bennett*, 465 F. Supp. 555, 566 n.18 (S.D.N.Y. 1979) and *Raitport v. Chemical Bank*, 74 F.R.D. 128, 134 (S.D.N.Y. 1977))); *see also Grant v. Cnty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) ("[A] district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." (citing *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir. 1991))); *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (noting that "[b]oth the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule.").

[7] Although Plaintiff was given leave to proceed solely as to the false arrest claim against Kuhnapfel and Holme, (*see* Order dated April 22, 2013), to the extent that the Amended Complaint again alleges a claim of "unlawful kidnapping," and Kuhnapfel addressed this claim in his motion to dismiss, the Court addresses this claim here.

must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Tenenbaum*, 193 F.3d at 600).

Plaintiff was arrested pursuant to an arrest warrant issued for violation of Michigan Penal Code § 750.350a, (*see* Michigan arrest warrant), which provides that "[a]n adoptive or natural parent of a child shall not take that child, or retain that child for more than 24 hours, with the intent to detain or conceal the child from any other parent or legal guardian of the child who has custody or parenting time rights under a lawful court order at the time of the taking or retention . . . or from any other person having lawful charge of the child at the time of the taking or retention." Mich. Comp. Laws Ann. § 750.350a. On April 2, 2012, Judge Dingell of the Wayne County Family Court adjudicated H.J. a temporary ward of the court pursuant to the Michigan statute providing for the "termination of parental rights to child remaining in foster care," *see* Mich. Compl. Laws Ann. § 712A.19b, based on Plaintiff's failure to provide necessary care, the substantial risk of harm to H.J.'s mental well-being, and an unfit home environment. (Def. Ex. E at ECF 13, Order of Adjudication, Child Protective Proceedings, Case No. 99375729, May 25, 2012). As an initial matter, it is doubtful that Plaintiff can assert a constitutionally protected interest in caring for H.J. subsequent to the termination of her parental rights by court order. However, even if Plaintiff could assert a constitutionally protected interest in continuing to care for H.J. in contravention of a court order, the removal of H.J. from Plaintiff's care under these circumstances was not "shocking, arbitrary, [or] egregious" and therefore did not rise to the level of a constitutional violation. *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (finding that plaintiff had not stated a claim for interference with familial relations where "the

10

removal of H and N from Plaintiff's custody was pursuant to an order of the Family Court based on, among other things, evidence that Plaintiff had subjected H and N to witnessing a domestic violence incident and that he had done so while having abused alcohol in their presence"). Moreover, this Court does not have jurisdiction to determine whether any custody determination made by a Michigan state court was a valid decision. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that "the domestic relations exception, as articulated by this Court since [1858], divests the federal courts of power to issue divorce, alimony, and child custody decrees").

In addition, to the extent that the relief sought by Plaintiff requires a challenge to the custody determination already made by a Michigan state court, such a claim is barred by the *Rooker-Feldman* doctrine, which forbids a district court from acting as a court of appeal to a final determination made by a state court. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("This court may not review the [state] family court's determinations regarding custody, neglect and visitation, as those issues were decided by the family court after providing [plaintiff] a full and fair opportunity to litigate those issues.") ; *Justice*, --- F. Supp. 2d at ---, 2013 WL 5972515, at *4 (E.D.N.Y. Nov. 5, 2013) (adopting report and recommendation declining to issue injunctive relief mandating the return of H.J. to Plaintiff's care).

In sum, Plaintiff was arrested pursuant to a valid warrant for parental kidnapping, but even if she had a constitutionally protected interest in contesting the removal of H.J. from her care, the Amended Complaint fails to state a claim for deprivation of due process rights based on Defendants' removal of H.J. into protective custody subsequent to Plaintiff's arrest. Kuhnapfel's motion to dismiss Plaintiff's claim for interference with familial relations, to the extent she

alleges one, is therefore granted. The Court also dismisses, *sua sponte*, this claim against Holme.[8]

### III. Conclusion

For the foregoing reasons, the Court grants Kuhnapfel's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted and dismisses, *sua sponte*, the Amended Complaint as to Holme. The Clerk of Court is directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

    s/MKB
MARGO K. BRODIE
United States District Judge

Dated: May 29, 2014
       Brooklyn, New York

---

[8] *See supra*, note 7.